# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PORTER DEVELOPMENT PARTNERS, LLC | § § § | CASE NO. 15-31305-H5-7 |
| | § | |
| WB MURPHY ROAD DEVELOPMENT, LLC | § § § | CASE NO. 15-31307-H3-7 |
| | § | |
| WB REAL ESTATE HOLDINGS, LLC | § § § | CASE NO. 15-31770-H1-7 |
| | § | |
| WALLACE BAJALLI INVESTMENT FUND II, LP, | § § | CASE NO. 15-31772-H5-7 |

## LOWELL T. CAGE, TRUSTEE'S REPLY TO CLAIMANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE EDUARDO RODRIQUEZ, U.S. BANKRUPTCY JUDGE:

COMES NOW, Lowell T. Cage, Trustee ("Trustee") and hereby makes this his Reply (the "Trustee's Reply") to Taylor Claimants' Response to Motion for Summary Judgment ("Claimants' Response") filed in these proceedings, and would respectfully show this Court as follows:

### I.   CLAIMANTS LEGAL ARGUMENTS IGNORE WELL SETTLED TEXAS LAW

1.   To prevent enforcement of the applicable statutes of limitations barring their claims, Claimants mistakenly rely on the Texas Supreme Court's opinion entered in *Atkins v. Crosland* at 417 S.W.2d 150 (Tex. 1967)   The facts relating to plaintiff's claims in *Atkins* are patently distinguishable from the facts giving rise to Claimants' alleged claims in these proceedings. In *Atkins* the plaintiff was asserting a tort cause of action based on <u>negligence</u> against his accountant for erroneous utilization of income reporting methods which resulted in assessment of a tax deficiency against him by the IRS.  The *Atkins* Court distinguished plaintiff's claims from the general rule in Texas -- "if the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort." *See, Atkins* at 153 (citing *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954).   In its conclusion, the *Atkins* Court specifically found that it was "turning from general principles to the facts involved in the case" and concluded as follows:

> "that the plaintiff's cause of action did not arise until the tax deficiency was assessed by the Commissioner of Internal Revenue.  Prior to assessment the plaintiff had not been injured.  That is, assessment was the factor essential to consummate the wrong – only then was the tort complained of completed. . If a deficiency had never been assessed, the plaintiff would not have been harmed and therefore would have had no cause of action.  . . .". *See, Atkins* at 153.

2. Claimants also mistakenly rely on the *Bauman v. Centex Corp* decision cited in their Response for the proposition that "legal injury must be sustained before a cause of action arises". Claimants quote the *Bauman* Court's announcement as follows:

"The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself, constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained, and this is true although at the time the act is done it is apparent that injury will inevitably result. *Bauman* , 611 F.2d at 1118.

3. Overtly missing from the foregoing quotation of the *Bauman* Court in the Claimants' Response is the next paragraph of the announcement by the *Bauman* Court as follows:

"If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately or on commission of the tort. *See, Bauman* at 1118 citing *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954).

In its *Bauman* opinion, the 5th Circuit Court also importantly noted that the Texas Supreme Court in its *Atkins* decision had stated an exception to the general rule [that a tort cause of action accrues when the tort is committed].

4. Claimants incorrectly assert that the facts in the *Bauman* case are similar to the facts presented in these proceedings. To the contrary, the facts in the *Bauman* case are inapposite. The plaintiff in *Bauman* was an employee (unlike Claimants) and shareholder of the defendant who had acquired stock in the defendant through a stock exchange (unlike Claimants) upon the purchase of his company (CCI) by the defendant (unlike Claimants). Plaintiff acquired one-half of his stock in the defendant outright and the other one-half of his stock was placed in escrow subject to an escrow agreement with the defendant (unlike Claimants) based on CCI's

earn-out performance during the next four fiscal years (unlike Claimants). However, the earn-out was never achieved by plaintiff. In the *Bauman* case, the District Court appropriately applied the exception to the general rule in Texas as stated in the *Atkin* decision because "until the escrow agreement had expired and the stock was lost, plaintiff had sustained no injury."

5. Claimants disingenuously contend that the exception to the well-established rule in Texas on accrual of tort causes of action as stated in the *Bauman* opinion should be applicable to their claims. Claimants simply argue that they were continually reassured by Wallace and Bajjali that they would receive a return on their money; and, therefore, they suffered no damages until the Wallace Bajjali businesses failed. Following Claimants' illogical reasoning, any investor who loses money in the failure of a bankrupt business should then be recognized as a creditor and not as an investor in its bankruptcy proceeding in contravention of the provisions mandated by Section 726 of the Bankruptcy Code.

(a) **Claims Alleged for Payment of IIRC Loan– Accrued on Date of Loan Payments**

6. Claimants provide only conclusory and unsubstantiated statements in their Affidavits to infer that the subject loan payments on the IIRC Loan were made for Wallace's personal benefit. Even if the Claimants' allegations are assumed to be true, their claims accrued on the date(s) of the alleged wrongful act – the dates on which the payments to IIRC were made to IIRC. *See, Seureau v. Exxon Mobil Corp.,* 274, S.W. 3d, 226 (Tex. App. – Houston [14th Dist.] 2008, *no pet.* Consequently, the Claimants' alleged claims relating to payment of the IIRC Loan accrued by no later than January 9, 2009 and limitations, therefore, ran on January 9, 2013

(b) **Claims for Alleged Fraud – Accrued on Date of the Merger in May 2009**

7. Claimants contend they were not injured until the money they entrusted to

Frishberg, Kaleta, and Wallace was lost by Wallace's resignation from the WBL Partnerships and filing of the WBL Partnerships' bankruptcy cases. Claimants incorrectly contend, therefore, their claims did not accrue until early 2015. Claimants' arguments about accrual miss the mark. In Texas, "[t]he date that an action accrues is a question of law." *Seureau v. ExxonMobil Corp.* at 226. A claim accrues when a wrongful act causes a legal injury, "regardless of when the plaintiff learns of the injury and even if all resulting damages have not yet occurred." As these cases make clear, where, as here, Claimants' alleged injuries arising from the purported fraud by the consolidation of the Affiliated Funds and WB Holdings (the "Merger") their claims accrued at the time of the Merger. *See Id.* Thus, it makes no difference when any particular Claimant, knew about his or her injury, or understood the extent of his or her damages. Claimants' claims accrued, therefore, when the Merger occurred between the Affiliated Funds and WB Holdings on May 26, 2009.[1]

8. Ignoring this case law, Claimants contend that they had not suffered an injury so long as their investments were viable and they stood a legitimate chance to earn a return on their money. To this end, Claimants make the assertion that they believed they would recover all of their investments in connection with an IPO and thus they suffered no injury until Wallace and Bajjali resigned, and put the key partnerships into bankruptcy. But Claimants' belief (even if genuine) that they would get their money back makes no difference as a matter of law.

9. In Texas, the law is well settled that "[w]hen the defendant's conduct produces a legal injury, however slight, the cause of action accrues and the statute of limitations begins to run." *Id.* at 226. This is true "even if all resulting damages have not yet occurred." *Id.* Thus, it makes no difference that Claimants believed they might recover some or all of their money in the

---

[1] Claimants disingenuously assert that the Trustee testified in his deposition that he does not know when their claims accrued. To the contrary, Trustee repeatedly testified that he believed their claims accrued on the date of the Merger in 2009. *See*, Schmidt Dec., Exhibit B- Cage Transcript, P 59 L 17 – P 62 L 15.

future.[2]  To support their position on "accrual" of their claims, Claimants again offer no competent evidence but only conclusory and unsubstantiated statements in their Affidavits.

10.   In their Response, the Claimants also now allege that the Merger never actually occurred based solely on hearsay statements contained in emails dated in June and December 18, 2009, from attorneys at Boyar Miller as the WBL Partnerships' counsel.  Contrary to the Claimants' unsubstantiated assertions, Trustee has previously produced the entirety of Debtors' voluminous organizational, financial, and accounting records as kept in the ordinary course of business to Taylor Claimants' counsel in 2018.  See, Declaration of Mobley – Exhibit 1.  To consummate the Merger, the legal documents for the Merger were prepared by the Boyar Miller law firm and signed by WB Holdings and the Affiliated Funds. Upon consummation of the Merger, WB Holdings was simultaneously formed in the State of Texas and applications and notices, as needed, were filed appropriately with regulatory agencies including, but not limited to, the State of Texas, the Internal Revenue Service, and the SEC.  See Bajjali Affidavits – Exhibits 6, 7, 8, 14, 15, 16, 18, 19, 20, 22, 23, 24, 25, 26.  Moreover, all accounting functions for WB Holdings and the Affiliated Funds were thereafter appropriately performed to comport with the terms of their Contribution Agreement on the Merger.  See West Affidavit.  Assuming *arguendo* that Claimants' allegations are true, the LLC members of Porter but not the Claimants have standing to object to any infraction of the LLC's Company Agreement governing transfer of Fund II's membership interests to WB Holdings in the Merger.

### (c) Claims for Alleged Diversion of Funds – Unsubstantiated by Claimants

11.   Claimants again simply provide conclusory and unsubstantiated statements in

---

[2] Using Claimants' "red light violation but no accident" example, if an accident had occurred and the person had been injured then "both parts" have happened for a lawsuit to accrue (as conceded by Claimants in their example). If the injured person is informed by physicians that he will recover from the accident but subsequently dies some years later, his claim clearly accrues on the date of the accident (the date of injury) and not on the later date of his death.

their Affidavits about alleged diversion of funds for personal benefit by Wallace and Bajjali. Claimants also generically assert that the instances of fraud and breach of fiduciary duty are too numerous to list. In support of their "too numerous claims" list, Claimants simply offer the unsubstantiated and conclusory statements, impressions, and unsubstantiated statements of Fox as the IIRC representative in his deposition, the letter dated August 4, 2008, from IIRC's counsel addressed to Wallace, and the memo dated February 25, 2009, from Sol Schwartz CPA to Wallace. *See,* Schmidt Dec., Exhibits I, J, K. The foregoing exhibits are objectionable on various grounds as incompetent summary judgment evidence. See Trustee's Objections to Claimants' Evidence filed simultaneously herewith.

## II. CLAIMS AGAINST MURPHY ROAD AND PORTER WERE NOT TOLLED

12. Murphy Road and Porter, which were single-purpose LLC's, were not "affiliates" of the Defendants who were parties to the 2012 and 2013 Tolling Agreements (held only by Taylor and Furtado). While Wallace and Bajjali managed the day-to-day operations of these LLC's subject to the terms of their respective Company Agreements, none of the Defendants held control over these LLC's. Wallace and Bajjali also owned only small minority interests in these LLC's; and the other Defendants owned no interests. WB Holdings, which held the majority interests in Murphy Road and Porter, was not identified as a Defendant in the 2012 and 2013 Tolling Agreements. Applying the plain, ordinary, and generally accepted meaning of "affiliate" as posited by Claimants, the competent summary judgment evidence proves Murphy Road and Porter do not qualify as "affiliates" within the meaning of the 2012 and 2013 Tolling Agreements. Moreover, the Forbearance Agreements covered only "unbarred" claims against the WBL Parties identified therein; and the claims, if any, against Funds I and II, and WB Holdings expired by its terms before filing of their bankruptcy cases. See, Bajjali Affidavit

### III. CONCLUSION

13. As the non-moving party, the Taylor Claimants must go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See, Davis v. Ft. Bend Cty.,* 765 F.3d 480, 484 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003). Aside from their spurious legal arguments, the Taylor Claimants, in the guise of inferring some basis to support their unliquidated claims, have presented no direct evidence but only their own unsubstantiated and conclusory statements or the otherwise scant objectionable statements of unrelated parties. The Taylor Claimants, therefore, have not shown they sustained an injury on which their claims would not be extinguished by all applicable statutes of limitations. Trustee has demonstrated there is no genuine issue of material fact and all relevant periods of limitations have expired on the Taylor Claimants' alleged unliquidated claims against the Debtors and Related Debtors.

Respectfully submitted,
*/s/ Theresa Mobley*

_____
THERESA MOBLEY PLLC
State Bar No. 14238600
5505 Bryan Street
Dallas, Texas 75206
ATTORNEY FOR LOWELL T. CAGE, TRUSTEE

### CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May 2021, a true and correct copy of the *Trustee's Reply to Claimants' Response to his Motion for Summary Judgment* was served on counsel for the Claimants, Charles Schmidt, by the Court's ECF and electronic mail.

*/s/ Theresa Mobley*

_____
THERESA MOBLEY

**INDEX OF SUMMARY JUDGMENT EVIDENCE**

The Trustee relies upon and hereby incorporates by reference the following exhibits, attached to the Affidavit of Costa Bajjali, in support of his Reply to Claimants' Response to Motion for Summary Judgment:

**Exhibit 14** – Certificate of Formation of WB Murphy Road Development LLC filed December 17, 2008 ("Murphy Road – Certificate of Formation")

**Exhibit 15** – Company Agreement of WB Murphy Road Development LLC dated December 31, 2008("Murphy Road Company Agreement")

**Exhibit 16**– Consent of Members – Merger of Affiliated Funds with WB Holdings ("Murphy Road Members' Consent to Merger")

**Exhibit 17** – Historical Schedule of Members' Interests in WB Murphy Road Development LLC (summary of voluminous documents maintained in Murphy Road business records) (the "Murphy Road Schedule of Members' Interest")

**Exhibit 18** –Certificate of Formation of Porter Development Partners LLC filed April 4, 2007 ("Porter Development – Certificate of Formation")

**Exhibit 19** – Company Agreement of Porter Development Partners LLC dated April 27, 2007 ("Porter Development Company Agreement")

**Exhibit 20** – Consent of Members – Approval of Prior Capital Contributions and Exchanges ("Porter Development Members' Consent to Prior Transfers)

**Exhibit 21**– Historical Schedule of Members' Interests in Porter Development Partners LLC (summary of voluminous documents maintained in Porter Development's business records) (the "Porter Development Schedule of Members' Interest")

**Exhibit 22** – WB Holdings Application for EIN No ("WB Holdings EIN Application")

**Exhibit 23** – NFS Letter Agreement (SEC Compliance) ("WB Holdings NFS Agreement")

**Exhibit 24** – IRS Tax Notice ("WB Holdings IRS Notice")

**Exhibit 25** – TX Comptroller-Franchise Tax Notice ("WB Holdings Franchise Tax Notice")

**Exhibit 26** – Company Agreement of WB Holdings ("WB Holdings Company Agreement")

The Trustee also relies upon and hereby incorporates by reference the Affidavit of William West in support of his Reply to Claimants' Response to Motion for Summary Judgment:

The Trustee also relies upon and hereby incorporates by reference Exhibit 1 attached to the Declaration of Theresa Mobley in support of his Reply to Claimants' Response to Motion for Summary Judgment: